## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

01 JUL -2 PM 12: 06

HARRY HAMMONDS,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀**Plaintiff,**⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
**v.**⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀**CV-99-JEO-0470-W**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
**SCOTTSDALE INSURANCE**⠀⠀⠀)
**COMPANY,**⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀**ENTERED**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀**Defendant.**⠀⠀⠀⠀)⠀⠀⠀JUL 2 2001

### MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment (doc. 39)[1] filed by defendant Scottsdale Insurance Company ("the defendant" or "Scottsdale"). The defendant filed a brief in support of the motion (doc. 42), to which plaintiff Harry Hammonds ("the plaintiff" or "Hammonds") submitted a brief in response. (Doc. 44). Thereafter, the defendant submitted a reply. (Doc. 45). Both parties have also filed evidentiary submissions in support of their respective positions. The court has reviewed the motion, the briefs and the evidentiary submissions and finds that the motion is due to be granted.

## I. PROCEDURAL BACKGROUND

Hammonds commenced this action by filing a complaint in the Circuit Court for Tuscaloosa County, Alabama on December 21, 1998, alleging claims against the defendant for breach of contract, bad faith, negligent and/or wanton supervision, fraud, outrage, and conversion. (Doc. 1, Ex. 1). The plaintiff's claims arise out of the defendant's actions in denying insurance coverage, a defense and indemnity when it withdrew its defense of

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record of the case.

*49*

Hammonds and refused to further defend or indemnify him the case of *Elizabeth Shirley v.*
*Harry Hammonds* ("Shirley suit"), in which Elizabeth Shirley alleged counts of assault, battery,
false imprisonment, invasion of privacy, intentional infliction of emotional distress, outrage, and
defamation. (Doc. 40, Ex. A). The defendant filed a notice of removal with this court on
February 26, 1999, on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441, *et seq.*
(Doc. 1). The Circuit Court for Tuscaloosa County, Alabama, ordered the transfer of the case on
March 9, 1999. (Doc. 4).

 Hammonds's claims for breach of contract allege that Scottsdale unlawfully withdrew its
defense of Hammonds in the Shirley suit because it failed to reserve its right to withdraw its
defense and was therefore estopped from doing so. (Doc. 1, Ex. ). Hammonds's claim for bad
faith alleges that Scottsdale's breach of the contract was (a) intentional and without lawful
justification, (b) not based on legitimate, arguable or debatable reasons, (c) constituted bad faith
refusal of his claims, and/or (d) was done in spite of Scottsdale's affirmative waiver of its right
to refuse coverage. (*Id.*). Hammonds's claim for negligent and/or wanton supervision alleges
that Scottsdale was negligent and/or wanton in failing to supervise its employees in the
evaluation and/or processing of Hammonds's claim. (*Id.*). Hammonds's claims for fraud allege
that Scottsdale initially misrepresented that it would defend and indemnify Hammonds in the
Shirley suit by retaining counsel on Hammonds's behalf, subsequently misrepresented that it
would not defend or indemnify Hammonds in the Shirley suit in its April 29, 1997, letter to
Hammonds denying coverage, and thereafter misrepresented that it would defend and indemnify
Hammonds by and through the previously retained counsel's active defense of Hammonds in the
Shirley suit. (Doc. 1, Ex. 1). Hammonds's claim for outrage alleges that Scottsdale's conduct
with regard to its defense and subsequent refusal to defend him in the Shirley suit was extreme

and outrageous and (a) was intended to inflict emotional distress upon Hammonds, or (b) Scottsdale knew or should have known that emotional distress was likely to result from its conduct. (Doc. 1, Ex. 1). Hammonds's claim for conversion alleges that Scottsdale failed to reserve its right to refuse coverage and refused to continue to provide a defense or to indemnify, and in so doing, subjected him to the possibility of great exposure in the Shirley suit. It further asserts that this action by Scottsdale constitutes a conversion of Hammonds's insurance premiums for Scottsdale's own use and purposes, without providing consideration in the form of coverages for the losses claimed. (*Id.*)

Scottsdale asserts that summary judgment is proper on Hammonds's claim for breach of contract because the complaint in the Shirley suit specifically alleged acts that were excluded from coverage under the policy, and therefore, Scottsdale was not estopped from denying coverage. (Doc. 42). Scottsdale contends that because Hammonds cannot establish a claim for breach of contract, his bad faith claim must fail. (*Id.*) Scottsdale argues that Hammonds's fraud claim must fail because Hammonds admitted that he had "never talked to Scottsdale in any way, form, or fashion." (Doc. 42; Doc. 40, Ex. J at 157). Because Hammonds's outrage claim does not fit within any of the three circumstances under which the Alabama Supreme Court has previously recognized for such a claim, Scottsdale insists that it, too, must fail. Scottsdale maintains that insurance companies have the right to limit their liability, and therefore, summary judgment on Hammonds's claim for conversion is proper because Hammonds got what he paid for. (Doc. 42). Finally, Scottsdale asserts that Hammonds's claims for negligent and/or wanton supervision must fail because he cannot establish that the Scottsdale representatives' handling his claim were incompetent.

3

## II. FACTUAL BACKGROUND

Hammonds purchased insurance coverage from Scottsdale for Harry's Bar for the period beginning July 16, 1996, and ending July 16, 1997. (Doc. 40, Ex. B). Shirley worked at Harry's Bar from October 1996 through January 1997. (Doc. 40 at Ex. A at ¶¶ 8 & 11). On April 4, 1997, Shirley filed a lawsuit against Hammonds alleging assault, battery, false imprisonment, invasion of privacy, intentional infliction of emotional distress, outrage, and defamation, demanding compensatory and punitive damages for personal injuries and mental anguish. Hammonds forwarded the Shirley summons and complaint to Pritchett-Moore, Inc., insurance agent Gragg Robinson on April 7, 1997. (Doc. 40, Ex. C; Ex. J at 45-46). Robinson immediately faxed the summons and complaint, along with a general liability loss notice and transmittal letter to Scottsdale, which Scottsdale received on April 7, 1997. (Doc. 40, Ex. C). Scottsdale's specialty claims examiner, Ray Shaffer, Jr., employed the law firm Donald, Randall, Donald & Tipton to defend Hammonds in the suit and instructed the firm to file an answer, requesting a jury trial, by May 5, 1997; send interrogatories with a medical release to Shirley; obtain medical and damage documents; provide Scottsdale with copies of the answer, medical and damage documents, a summary of the interrogatories, a litigation plan within thirty days after the discovery responses were received; and call Scottsdale upon receipt of instructions to confirm receipt of the material. (Doc. 40, Ex. D & Ex. L at 14). The fax was directed to William Donald at the law firm. (*Id.*, Ex. D).

Shaffer dictated a letter on April 10, 1997, to Hammonds, reserving Scottsdale's right to withdraw its defense on April 10, 1997. However, the letter was never sent. (Doc. 40, Ex. M at 32; Ex. L at 13, 17).

On April 15, 1997, Donald filed an answer on behalf of Hammonds.

4

Scottsdale's litigation specialist/technical consultant, Kathryn Davin, reviewed Shaffer's letter to Hammonds on April 24, 1997, and advised Shaffer to change the letter to inform Hammonds that his claim was being denied and the defense withdrawn because the facts alleged in the Shirley lawsuit indicated that the claim was based on employment-related practices, which were specifically excluded from coverage under the policy's Endorsement UTS-182. (Doc. 40 Ex. M at 33; Ex. L at 17). On April 29, 1997, Shaffer changed the letter per Davin's instruction, and sent it by certified mail to Hammonds. (Doc. 40 at Ex. F). Hammonds received the letter on May 5, 1997, and then provided it to Robinson, who explained to Hammonds that Scottsdale apparently decided to him deny coverage. (Doc. 40 Ex. K at 29-32). Robinson called Donald, who up until that time was unaware of the letter to Hammonds. (*Id.* at 32-35). Donald stated that he had already "'begun discovery and scheduled depositions.'" (*Id.* at 35). Donald told Robinson that Scottsdale did not sent this case to him under "a reservation of rights." (*Id.* at 35-36).

The Donald, Randall firm continued its active defense of the Shirley suit, on Hammonds's behalf. On May 7, 1997, Donald sent a letter to Shaffer advising him of the status of the ongoing defense of the Shirley suit, with copies of an answer, interrogatories, request for production, and notice of deposition prepared on behalf of Hammonds in defense of the Shirley suit. (Doc. 40 at Ex. E). On June 23, attorney Donald sent a letter to Shaffer informing him that Shirley's deposition had been postponed in order to review her discovery responses prior to the taking of her deposition, and that Hammonds's deposition would likely follow Shirley's. (Doc. 40 at Ex. H). Upon receipt of Donald's June 23 letter, Shaffer called Donald to inquire as to his continued communication with Scottsdale regarding the Shirley suit, and confirm that Donald was aware that Scottsdale had disclaimed coverage. (Doc. 40, Ex. L at 42-43). Donald informed

5

Shaffer that he had not received the April 29, 1997, disclaimer letter to Hammonds, so Shaffer faxed a copy of the April 29, 1997, letter to Donald.  (*Id.* at 32).  Donald met with Hammonds to discuss his further representation; however, Hammonds preferred to retain another attorney to defend him in the Shirley suit.

The Shirley suit was tried on September 16, 1998, to a jury which returned a verdict for Hammonds on September 21, 1998. (Doc. 1, Ex. 1, ¶ 6).  Hammonds accrued $14,717.13 in attorneys fees and expenses in connection with his defense of the Shirley suit after Scottsdale disclaimed coverage and withdrew its defense in the suit.  (*Id.*).

## III. SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Initially, the moving party bears the burden of proof "to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

The moving party can satisfy his burden by presenting evidence that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-323; FED. R. CIV. P. 56(a) and (b).

Should the moving party meet his burden of proof, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary

judgment." *Clark,* 929 F.2d at 608. Material facts are those that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. CT. 2505, 91 L. ED. 2d 202 (1986). Genuine material facts are those material facts that could cause a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248. The nonmoving party need not present evidence in a form necessary for admission at trial, however, the movant may not merely rest on the pleadings. *Celotex,* 477 U.S. at 324.

The court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, and all reasonable inferences should be made in favor of the nonmovant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir. 1992). The judge's role is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## IV. DISCUSSION

### A. Breach of Contract

This diversity case arises from Scottsdale's alleged breach of the insurance contract by denying coverage and withdrawing its defense of the insured, Hammonds, in the Shirley suit. Upon receipt of the summons and complaint in that lawsuit, Scottsdale employed counsel for Hammonds. Scottsdale then withdrew its defense, and Hammonds was required to retain counsel for the purpose of continuing his defense in the Shirley suit. Scottsdale, however, withdrew its defense without any prior notice to Hammonds that it was reserving the right to do so. Hammonds asserts that Scottsdale was estopped from withdrawing its defense undertaken without a reservation of its rights to withdraw if it later determined that the suit was not covered under Hammonds's insurance policy, and therefore, its withdrawal of a defense in the Shirley suit constitutes a breach of contract.

7

Scottsdale argues that summary judgment is proper on Hammonds's breach of contract

claim because the acts alleged in the Shirley suit were specifically excluded from coverage under

Endorsement UTS-182s[2] in Hammonds's policy, and it was therefore not under any obligation to

provide a defense to Hammonds.

In *Campbell Piping Contractors, Inc. v. Hess Pipeline Co.*, 342 So. 2d 766 (Ala. 1977),

the Alabama Supreme Court adopted the following general rule regarding an insurer's failure to

reserve the right to later challenge coverage:

> The doctrine of estoppel is said to be founded upon principles of equity, morality
> and justice. 31 C.J.S. Estoppel § 1. When a liability insurer, by assuming the
> defense of an action leads one to believe liability to do so is not denied, it would
> be unfair to subsequently permit that insurer to deny coverage, when, without
> reservation and with knowledge, it assumes exclusive control of the defense of an
> action. . . .

342 So. 2d at 770 (citing 38 A.L.R.2d 1148, § 5[b] and cases therein). The Court further stated

that "the general rule is limited by the principle that the insurer may avoid the operation of the

rule by giving notice that the assumption of the defense is not a waiver of its right to deny

coverage." 342 So. 2d at 770-71. The general rule is stated in 38 A.L.R.2d 1151, § 3, as

follows:

> [A] liability insurer which assumes and conducts the defense of an action brought
> against the insured with knowledge of facts taking the accident or injury outside
> the coverage of the policy, and without disclaiming liability or giving notice of a
> reservation of its right to deny coverage, is thereafter precluded in an action upon
> the policy from setting up the defense of noncoverage. . . .

*Campbell Piping*, 342 So. 2d at 771.

---

[2] The relevant language contained in the policy's UTS-182s Employment-related Practices Exclusion is as follows:
"This insurance does not apply to: 'Bodily injury' to: (1) A person arising out of any: . . . (c) Employment-related practices,
policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment,
humiliation or discrimination directed at that person." (Doc. 40, Ex. B at HAM 0578). "'Bodily injury' means bodily injury,
sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at HAM 0569).

In *Burnham Shoes, Inc. v. West American Insurance Co. and American Fire and Casualty Co.*, 504 So. 2d 238 (Ala. 1989), the Alabama Supreme Court was presented with a certified question from the Eleventh Circuit Court of Appeals. The question was "whether an insurer who undertakes to defend an insured without reserving the right to withdraw its defense, thereby waives its right to do so." *Burnham Shoe*, 504 So. 2d 238, 241 (Ala. 1987). The insurers in *Burnham Shoe* initially defended the insured by filing an answer to the complaint and then approximately one month later informed the insured that they were denying coverage for the suit and would not provide any further defense. *Id.* 504 So. 2d at 239. In answering the question, Alabama Supreme Court stated, "Thus, under Alabama law, if an individual does, in fact, undertake to defend an insured without reserving the right to withdraw its defenses, it thereby waives its right to do so." *Id.* at 242. In reaching its decision, the Court quoted extensively from *Campbell Piping*.

Many of the underlying facts in this case are undisputed. Upon receipt of the summons and complaint in the Shirley suit, Scottsdale immediately undertook the defense of Hammonds and retained an attorney for that purpose. There was no statement or correspondence to Hammonds telling him that Scottsdale was providing counsel with the understanding that it retained a "reservation of right." The firm was given specific instructions concerning the handling of the case. Counsel filed an answer and began discovery, including scheduling depositions. Scottsdale sent Hammonds notice that it was withdrawing its defense for lack of coverage within approximately three to four weeks of its being informed of the Shirley lawsuit.

The plaintiff asserts that the exception to coverage cited by the defendant (see footnote 2 herein) does not apply to the allegations in the Shirley suit. The court disagrees, the alleged acts enumerated in the Shirley complaint are the types of conduct specifically excluded by the

9

applicable provision.  The Shirley complaint alleged that Hammonds assaulted and battered her;

falsely imprisoned her; invaded her privacy; inflicted emotional distress on her; engaged in

outrageous conduct; and, defamed her when he told a prospective employer that she had stolen

from him.  (Doc. 40, Ex. A).  These allegations fit within the "Employment-Related Practices

Exclusion" specified in the attached endorsement referencing, among other things, "harassment,

humiliation or discrimination directed at that person."  (Doc. 40, Ex. B at HAM 0578).  The

conduct alleged in the Shirley suit purportedly occurred while Shirley was employed by

Hammonds and during work hours.  (Doc. 40, Ex. A at ¶¶ 8-12).  The last incident, the

defamation, purportedly occurred after she left, but when a prospective employer called

regarding a reference.

   The plaintiff is correct that "'[e]xceptions to coverage must be interpreted as narrowly as

possible to provide maximum coverage for the insured, and must be construed most strongly

against the company that drew the policy and issued it.'"  (Doc. 44, p. 10 (citing *Westchester

Fire Ins. Co. v. Barnett Millworks, Inc.*, 364 So. 2d 1137 (Ala. 1978)).  *See also Blackburn v.

Fidelity and Deposit Co.*, 667 So. 2d 661, 669 (Ala. 1995) ("ambiguities in the language of an

insurance policy are construed in favor of the insured, rather than the insurer") (citing *Scottsdale

Ins. Co. v. Town of Orange Beach*, 618 So. 2d 1323 (Ala. 1993); *St. Paul Fire & Marine Ins. Co.

v. Edge Memorial Hosp.*, 584 So. 2d 1316 (Ala. 1991); *Sullivan v. State Farm Mut. Auto. Ins.

Co.*, 513 So. 2d 992 (Ala. 1987)).  While an insurance provider is entitled to write narrow policy

limits of liability, "it must use precise language."  *Blackburn*, 667 So. 2d at 669 (citing *Garrett v.

Alfa Mut. Ins. Co.*, 584 So. 2d 1327 (Ala. 1991)).  Exclusions limiting policy liability "are

construed narrowly, so as to provide the maximum coverage for the insured."  *Blackburn*, 667

So. 2d at 669 (citing *Alliance Ins. Co. v. Reynolds*, 494 So. 2d 609 (Ala. 1986); *Employers Ins.

10

*Co. of Alabama, Inc. v. Jeff Gin Co.*, 378 So. 2d 693 (Ala. 1979)).

However, the language in the present endorsement is clear and definitive enough to exclude the purported conduct from coverage. Accordingly, the court must address the issue of whether Scottsdale is otherwise responsible for its actions in this matter.

Scottsdale asserts that insurers are allowed a reasonable period of time to reserve their right to deny coverage. (Doc. 45). While this general assertion is correct, its application in the present case is the pertinent issue. Scottsdale did not notify Hammonds that it was reserving its right to later deny coverage prior to doing so. While Scottsdale did notify Hammonds that it was denying coverage, within a reasonable period of time (less than a month), it had not previously notified Hammonds that it was reserving the right to do so. *See Burnham Shoes*, 504 So. 2d 238 (answering certified question in which insurer initially defended insured but after about a month notified insured that it was denying coverage, the Alabama Supreme Court determined that "if an insurer does, in fact, undertake to defend an insured without reserving the right to withdraw its defense, it thereby waives its right to do so"). The pertinent question is whether Scottsdale's failure to reserve its rights acted as a waiver pursuant to controlling Alabama law.

Scottsdale asserts that its conduct does not create coverage where it did not previously exist. (Doc. 42, p. 11). It premises this argument on the fact that "[i]t is well settled that insurance coverage cannot be created by waiver or estoppel. Home Indem. V. Reed Equip. Co., 381 So. 2d 45 (Ala. 1980); Home Ins. Co. v. Campbell Motor Co., 227 Ala. 499, 150 So. 486 (1933)." (*Id.* at 11-12). However, the Alabama Supreme Court has also consistently held "that the insurer's duty to defend is more extensive than its duty to pay. *See Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76 (Ala. 1989); *United States Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985); and *Samply v. Integrity Ins. Co.*, 476 So. 2d 79 (Ala.

11

1985)." *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So. 2d 160, 167-68 (Ala. 1991).

The defendant's reliance on *Mooradian v. Canal Insurance Co.*, 272 Ala. 373, 130 So. 2d 915 (1961) and *Liberty Mutual Fire Insurance Co. v. Parish*, 630 So. 2d 437 (Ala. 1993), is not sufficient to justify summary judgment on the plaintiff's claim that Scottsdale is liable under an estoppel theory. Although *Mooradian* held that an insurer did not waive a policy exclusion exempting coverage of bodily injury to a passenger, it is factually and legally distinguishable from the present case. The insurer in *Mooradian* provided the insured with more than adequate notice of its position that the injury was not covered before it undertook the defense of the case to protect its position. *Mooradian*, 130 So. 2d at 919. Although *Parish* held that detrimental reliance is a critical element of estoppel, it is also distinguishable. In that case, the estoppel issue related to the insurer's failure to raise a defense to an insured's initial claim, while raising the defense on a concomitant claim. It did not concern a failure to defend issue. *Parish*, 630 So. 2d at 438. Accordingly, the court finds that it must determine whether the defendant's actions created a duty to defend sufficient to overcome the motion for summary judgment.

The defendant asserts in its reply brief that "an insurer is estopped to withdraw **if, and only if**, it assumes and conducts the defense of an action brought against the insured (1) with **knowledge** that the claims are outside the coverage of the policy, and (2) it fails to 'give **timely notice** that its undertaking to defend does not constitute a waiver of any coverage question it might have.'" (Doc.45, p. 5) (emphasis in original). The plaintiff retorts that there is no "'with knowledge'" requirement. (Doc. 46, pp. 2-3). The court finds that there is a requirement that the defendant act "with knowledge." The knowledge requirement in Alabama dates back to *Campbell* when the court in discussing the general rule stated that "it would be unfair to subsequently permit th[e] insurer to deny coverage, when, without reservation and **with**

12

**knowledge,** it assumes control of the defense of an action." *Campbell Piping,* 342 So. 2d at 7

70. (emphasis added). This is also consistent with the general rule found in the American Law

Reports.

Even the case cited by the plaintiff, *Home Ins. Co. v. Rice*, 585 So. 2d 859 (Ala. 1991),

noted that the insurer in that case ("Home") had knowledge of the substance of the claims

against Rice, the insured, and yet undertook the representation. In that case, Rice was sued in

two actions (the *Ross* and *Miller* suits). The insurer was notified by letter of each suit and that

Rice had retained counsel. The insurer contacted counsel and agreed to his representation of

Rice without any reservation of right. Thirteen months later, the insurer informed Rice and

counsel that it "had 'declined' coverage for Rice and refused to provide for his defense." *Id.* at

860. Rice sued the insurer to compel it to defend him in the actions. After summary judgement

was granted in favor of Rice, the insurer appealed. Rice asserted among other things, that the

insurer was estopped from defending him under the circumstances. The Supreme Court in

holding that the insurer was estopped from denying Rice a defense stated:

> When The Home retained Mr. Grenier to defend Rice in the *Ross* action, it
> had the complaint in *Ross* before it. Likewise, when The Home sent Mr. Grenier
> a letter retaining him to defend Rice in the *Miller* action it had the *Miller*
> complaint before it. The complaints in *Ross* and *Miller*, which set forth the
> claims and allegations against Rice, contained facts sufficient to put The Home on
> notice of any potential problem with coverage under its insurance contract with
> Rice. The Home having knowledge of the substance of those claims against Rice,
> it was incumbent upon The Home to preserve its rights by giving notice that its
> assumption of Rice's defense was not a waiver of its right to deny a duty to
> defend. Having failed to do so, The Home certainly led Rice to believe that its
> liability to provide a defense was not denied. It would be unfair to allow The
> Home to deny a duty to provide Rice's defense 13 months after it had assumed
> that defense. *Campbell Piping Contractors, Inc. v. Hess Pipeline Co.*, 342 So.2d
> 766 (Ala. 1977); *Burnham Shoes, supra.*

*Rice*, 585 So. 2d at 861.

Under the applicable authorities, the court finds that knowledge of the nature of the

claims and allegations against the insured is required before estoppel can be asserted against the

insurer. That element is satisfied in this case. The record is clear that Scottsdale had been

provided with a copy of the complaint filed by Shirley. It also must be charged with knowledge

of the contents, including exclusions, of the insurance policies it issues. Under these

circumstances, the court finds the plaintiff has satisfied the knowledge requirement.

The defendant next claims, citing *Parish*, that the plaintiff has not demonstrated

detrimental reliance or prejudice. (Doc. 42 at 13-14). The plaintiff, citing *Rice*, retorts that

proof of actual prejudice is not required. (Doc. 46 at 3). *Parish* is distinguishable because it is a

case involving coverage and not a failure to defend. In *Rice*, the court stated:

> . . . The Home argues that proof of actual prejudice to the insured is
> required before an insurance company that failed to reserve its right to deny a
> duty to defend is estopped to deny that duty. However, neither *Campbell, supra*,
> nor *Burnham Shoes, supra*, requires the insured to demonstrate actual prejudice in
> a duty-to-defend action. See generally *Integrity Insurance Co. v. King Kutter,
> Inc.*, 866 F.2d 408 (11th Cir. 1989).[3]

---

[3] In *Integrity Insurance*, the insurer (and ultimately its representative after it was placed in bankruptcy) filed a declaratory judgment action seeking an order that it was not under a duty to defend or indemnify the insured company and certain of its employees in a suit brought by a co-employee. The district court held that the insurer had no duty to indemnify two individuals under an estoppel or waiver theory when the insurer retained a law firm to represent the insured and its agents without reservation of rights and then approximately fourteen months later informed the employees "that there was 'serious doubt' whether they were 'insured persons' under the policy. . . ." *Id.*, 866 F.2d at 410.  "[T]he sole issue on appeal [was] whether the district court erred in holding that [the insurer] had no duty to indemnify [the employees] under an estoppel or waiver theory." *Id.* at 411.  The court discussed the application of *Burnham* and *Campbell*, stating:

> The Alabama Supreme Court has held an insurer that undertakes the defense of a putative insured
> without reserving the right to withdraw its defense waives its right to do so.  *Burnham Shoes, Inc. v. West
> American Ins. Co.*, 504 So. 2d 238, 241-42 (Ala.1987), *answering certified question from*, 784 F.2d 1531
> (11th Cir. 1986), *answer conformed to*, 813 F.2d 328 (11th Cir. 1987); *Campbell Piping Contractors, Inc. v.
> Hess Pipeline Co.*, 342 So. 2d 766, 770- 71 (Ala. 1977). Neither *Campbell Piping* nor *Burnham Shoes*
> requires the putative insured to demonstrate actual prejudice in a duty to defend action. The issue in this
> appeal is whether Taylor and Anthony must show actual prejudice arising from AIGA's undertaking their
> defense or whether prejudice is presumed in a duty to indemnify action based on an estoppel theory where an
> insurer undertakes the defense of a putative insured in a lawsuit, knowing (or having constructive knowledge
> of information) that its policy with the insured does not provide for coverage in the event the insured is found
> liable, and fails to reserve its right to withdraw its defense.

> It appears, however, that this issue is not controlled by any precedent of the Supreme Court of
> Alabama or any other Alabama appellate court. In both *Campbell Piping* and *Burnham Shoes*, the Alabama

*Rice*, 585 So. 2d at 861.

The issue of whether actual prejudice is required is no clearer today.  In *Canal Ins. Co. v. Republic Ins. Co.*, 718 So. 2d 8 (Ala. 1998), the insured was covered in a wrongful death action by Old Republic which sought a declatory judgment from the court that Canal Insurance also issued insurance on the insured's property.  Old Republic argued, among other things, that Canal was estopped from denying coverage or a defense to the insured because a Canal claims supervisor wrote a letter to the insured stating that it had retained counsel to represent the insured in the wrongful death action without reserving any right to withdraw.  *Canal*, 718 So. 2d at 12.  Canal asserted that it had informed the insured before and after the letter that he did not have coverage.  *Id.* at 13.  The insured did not dispute that he had notice that the policy did not cover the accident.  The Supreme Court found that the failure to include a reservation of rights in the letter did not waive the right to withdraw from defending the case under the circumstances.  The Court stated:

> . . . we find no basis for applying the rule of *Burnham Shoes* and *Campbell Piping* to the facts of this case.  In spite of the April 1995 letter, there is no indication that Canal in fact provided a defense to Wilson in the wrongful death action.  Old

Supreme Court cited with approval the general rule that where an insurance company assumes the defense of an action without a reservation of rights and with full knowledge of facts that would have permitted it to deny coverage, the company may be estopped from subsequently raising the defense of non-coverage. *Burnham Shoes*, 504 So. 2d at 241-42, *Campbell Piping*, 342 So .2d at 770-71. [ ] Although the term "non-coverage" is broad enough to encompass a right to indemnification, neither *Burnham Shoes* nor *Campbell Piping* is a right to indemnification case where the putative insured's claim for indemnification arises solely from the insurer's undertaking the putative insured's defense. [ ] Thus, these cases provide guidance but do not resolve the question whether prejudice is presumed in duty to indemnify as well as duty to defend cases.

*Id.* at 411-12 (footnotes omitted).  The Eleventh Circuit certified the following question to the Alabama Supreme Court:

Whether an insurer who: (1) undertakes the defense of a putative insured in a lawsuit; (2) knows (or has constructive knowledge of information) that its policy with the insured does not provide for coverage in the event the insured is found liable; and (3) fails to reserve its right to withdraw its defense, is estopped from denying a duty to indemnify the putative insured in the absence of proof of actual prejudice to the insured caused by the insurer's defense, or is prejudice to the putative insured's defense presumed?

The question was withdrawn approximately one year later. *Integrity Ins. Co. v. King Kutter, Inc.*, 596 So. 2d 55 (Ala. 1990).

Republic apparently provided such a defense pursuant to its policy covering 7K Logging. There is some indication that an attorney retained by Canal may have entered an appearance on behalf of Wilson, but there is no indication that any such attorney took an active role in the defense or did anything by which Wilson could have been prejudiced by virtue of the failure of the April 1995 letter to include a reservation of rights.

After receiving this letter in April 1995, Wilson filed in May 1995 the declaratory judgment action seeking a declaration that his Canal policy provided coverage for the Williams wrongful death action. Thus, he obviously did not rely on the April letter and assume that Canal would defend and indemnify him. Wilson later obtained a full release from any liability in the Williams action, as a result of the efforts of the legal representation supplied by Old Republic. He then moved in his action for a declaratory judgment for dismissal of his claims (the cross-claim was then pending, so he did not move simply to dismiss the action). Thus, he was not prejudiced by the failure of the April 1995 letter to include a reservation of rights.

*Id.* at 13. (emphasis added).

The defendant cites a litany of cases in support of its argument that the delay in this case–less than thirty days–is not unreasonable, and, in fact, is timely as a matter of law.[4] In its

---

[4] Scottsdale states:

A period of less than thirty days from receipt of the complaint and within the time allowed for filing an answer to the complaint cannot be deemed unreasonable. Certainly, the insurer should not be penalized for retaining counsel to defend the insured and protect its interests immediately upon receiving the complaint. To hold otherwise would serve only to encourage insurers to delay in hiring counsel at the risk of prejudicing the rights of the insured. Notifying the insured within thirty days and within the time period for responding to the complaint is timely notice, *as a matter of law,* particularly where the insured can show no prejudice by reason of the insurer having assumed the defense. *See, e.g., Allstate Ins. Co. v. Keillor*, 203 Mich. App. 36, 39, 511 No.W.2d 702 (1993)(where insurer assumed defense of insured and sent reservation of rights letter to insured two months later, see 442 *Mich.* at 58-59, insurer "was not estopped from asserting its policy exclusions because there was no unreasonable delay in asserting them"); *Granite State Ins. Co. v. St. Cyril & Methodius Seminary*, 1991 U.S.Dist. Lexis 19713 (E.D. Mich. 1991) (where insurer assumed defense and sent reservation of rights letter to the insured less than one month after suit was filed, "as a matter of law, notice was timely" and insurer had no duty to defend or indemnify); *Federal Ins. Co. v. X-Rite, Inc.*, 748 F. Supp. 1223, 1226 (W.D. Mich. 1990)("Federal notice [of reservation of rights], given approximately nine weeks after it learned of the action, was reasonably timely as a matter of law."); *Fire Ins. Exchange v. Fox*, 167 Mich. Ap. 710, 423 N.W.2d 325 (1988) (where insurer assumed the defense of insured and sent insured a reservation of rights letter four months later, the court held that insurer was not estopped to deny coverage and, noting that "four months is, as a matter of law, not an unreasonable length of time", affirmed trial court' summary judgment that insurer had no duty to defend or indemnify); *Diamond Service Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648 (D.C. Ct. App. 1984) (insurer was not estopped to, nor did it waive its right to deny coverage and withdraw from defense, by reason of assuming defense and undertaking to investigate, where it requested non-waiver agreement from insured within a few days, sent reservation of rights letter a month later, and after obtaining opinion of counsel filed d.j. eight months after it received the complaint, an insurer having a reasonable time to investigate to determine its acceptance of liability); *State*

brief, Scottsdale argues that there is a correlation between the time delay in the notification of non-coverage or reservation of right and any prejudice to the insured. As stated above, the plaintiff asserts that actual prejudice need not be shown under Alabama law, particularly *Campbell Piping*, *Burnham Shoes* or *Canal Insurance*.

This court does not find Alabama law as unambiguous as the plaintiff. Following the plaintiff's reasoning would require this court to impose absolute liability on an insurer in any instance that counsel is retained without reservation of right. Such an expansive reading of the cases is not warranted or reasonable. In *Campbell Piping*, whether the plaintiff must show prejudice was not an issue because the insurer undertook the representation with full knowledge that the lawsuit was inevitable and without any reservation of rights and after extensive communications between the various participants in the litigation and the insurer. Accordingly, the court stated:

> Under these circumstances, we think it is too late for U.S.F. & G, insurer of Campbell, to now take the position that it owes no defense to Hess. With full knowledge that the lawsuit was inevitable, and without any reservation of rights to later deny liability, it undertook to defend both Campbell and Hess in the Nelson litigation. It is now estopped to deny that it is so obligated.
>
> . . . .
>
> Under the undisputed facts in this case, U.S.F. & G. undertook to defend the action brought by Nelson against Campbell and against Hess. It retained an attorney for that purpose. When the attorney pointed out that a conflict would exist which would prohibit his representing both Campbell and Hess if Campbell (or U.S.F. & G. as its insurer) denied that Campbell was obligated to Hess under the indemnity provisions of the contract, it was conceded on all sides that

---

*Farm Mut. Auto. Ins. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1971)(in the absence of showing of actual prejudice to insured, insurer was not estopped to deny defense and indemnity where it had assumed defense of insured without reserving its rights, but filed a d.j. immediately after it became aware of the coverage defense during plaintiff's deposition taken three months after suit was filed), *overruled in part on another point of law by*, *Farmers Ins. Exchange v. Call*, 712 P.2d 231 (1985).

(Doc. 45, pp. 5-7) (footnotes omitted).

Campbell and U.S.F. & G. agreed to defend Hess pursuant to the contract. *Campbell Piping*, 342 So. 2d at 770-71.

In *Burnham Shoes*, the certified question of whether "an insurer, who undertakes to defend insured without reserving the right to withdraw its defense, thereby waives its right to do so" was answered in the affirmative. The issue of whether prejudice or timeliness of a notice of reservation were not at issue. The insurers therein initially defended the insured; but approximately a month later, after filing an answer, discontinued representing the insured. *Id.*, 504 So. 2d at 239.

In *Canal Insurance*, the insured brought a declatory judgment action against his insurers, including Canal, claiming that he had coverage under an automobile insurance policy issued by them for an accident that resulted in the death of a third party when a wheel on the insured's trailer struck the third party. One of the insurers filed a cross-claim asserting that Canal had a duty to defend and indemnify the insured. Canal denied that its policy covered the accident because the trailer was being towed by a vehicle other than the one listed in the policy. One of the theories of liability asserted against Canal was that it had sent the insured a letter without any reservation of rights stating that it had retained counsel to represent the insured in the action. The record, however, also demonstrated that both before and after the letter was sent, Canal "consistently [took] the position that its policy [did] not cover the collision." *Id.*, 718 So. 2d at 12. In finding that the failure to include a reservation of rights in the letter did not waive its right to withdraw from the defense of the case, the court stated:

> However, we find no basis for applying the rule of Burnham Shoes and Campbell Piping to the facts of this case. In spite of the April 1995 letter, there is no indication that Canal in fact provided a defense to Wilson in the wrongful death action. Old Republic apparently provided such a defense pursuant to its policy covering 7K Logging. There is some indication that an attorney retained

18

by Canal may have entered an appearance on behalf of Wilson, but there is no indication that any such attorney took an active role in the defense or did anything by which Wilson could have been prejudiced by virtue of the failure of the April 1995 letter to include a reservation of rights.

After receiving this letter in April 1995, Wilson filed in May 1995 the declaratory judgment action seeking a declaration that his Canal policy provided coverage for the Williams wrongful death action. Thus, he obviously did not rely on the April letter and assume that Canal would defend and indemnify him. Wilson later obtained a full release from any liability in the Williams action, as a result of the efforts of the legal representation supplied by Old Republic. He then moved in his action for a declaratory judgment for dismissal of his claims (the cross-claim was then pending, so he did not move simply to dismiss the action). Thus, he was not prejudiced by the failure of the April 1995 letter to include a reservation of rights.

Moreover, we question whether Old Republic could step into Wilson's shoes to assert an estoppel based on the failure of the April 1995 letter to reserve Canal's right to deny coverage. However, because, under the circumstances, we find no basis on which Wilson could invoke the lack of a reservation of rights, we do not decide this question.

*Id.*, 718 So. 2d at 13.

The *Canal Insurance* Court decided not to apply *Burnham Shoes* and *Campbell Piping* premised on the absence of any prejudice to the insured. The plaintiff herein distinguishes *Canal Insurance* from this case premised on the fact that Canal never provided a defense to the insured, whereas Donald represented the insured in this case by filing an answer and scheduling discovery before being replaced by counsel of the plaintiff's choosing. This, the plaintiff asserts, distinguishes his situation from the holding in *Canal Insurance* and brings him within the confines of the holdings in *Brunham Shoes* and *Campbell Piping*.[5]

As inviting as the plaintiff's approach is because of its simplicity, this court is unwilling to adopt the same under the facts presented. There is no dispute that (1) Scottsdale retained

---

[5] The plaintiff also relies on *Rice* wherein the court held that neither *Campbell* or *Burnham Shoes* requires proof of actual prejudice to the insured in a duty-to-defend case. *Rice*, 585 So. 2d at 861. This court finds *Rice* distinguishable in that the insurer failed to act over a thirteen month period.

Donald; (2) Scottsdale provided specific instructions to Donald in its initial fax to him; (3) he

filed an answer, a set of interrogatories and a request for production on Shirley within

approximately one week of being retained; (4) around early May 1997, the plaintiff learned that

Scottsdale was denying him coverage and further representation;[6] (5) Donald continued to

represent the plaintiff by filing a notice of the taking of Shirley's deposition[7] and by asking the

plaintiff to answer Shirley's interrogatories; (6) Donald filed a motion to withdraw on July 14,

1997, which was granted; (7) the plaintiff hired new counsel to defend him in the Shirley

lawsuit; and, (8) the jury returned a verdict in the plaintiff's favor.  The record also demonstrates

that he incurred expenses and attorney's fees of approximately $15,000 after Scottsdale

withdrew the defense.  (Doc. 1, ¶ 6).  Neither these facts nor any assertions by the plaintiff in his

briefs demonstrates prejudice as a consequence of the defendant's actions.

There is no question that the company was dilatory in notifying him of their denial of

coverage.  Ideally, the insured would be informed immediately.  In this case, that would have

been when the claims reviewer, Sherrer, first examined the claims on April 10, 1997.  The fact

that he did not realize the application of the exclusion until his letter of reservation of rights was

submitted to his supervisor approximately two weeks later is not unreasonable particularly where

the letter was changed to a disclaimer of coverage and provided to the plaintiff within one month

of the original notice of the Shirley lawsuit.  The three week delay in this case in no way enured

to the detriment of the plaintiff.  A timely answer was filed.  A defense strategy, which could be

---

[6] Scottsdale informed the plaintiff by mail on May 5, 1997, that it was disclaiming coverage and a defense.

[7] The record demonstrates that the decision to take the Shirley deposition was approved on April 14, 1997, by Ray Shaffer, Jr., Scottsdale's specialty claims examiner assigned the Shirley suit.  (Doc. 40, Ex. L, p. 13).

altered if necessary, was formulated.[8]  The trial did not commence until over sixteen months

later.[9]  (Doc. 1, ¶ ).  Additionally, Scottsdale incurred Donald's expenses until he was released.[10]

The court finds that applying estoppel to the facts in this case would be inconsistent with

the purpose of the doctrine.  In *Mazer v. Jackson Ins. Agency*, 340 So. 2d 770 (Ala. 1976),  the

Alabama Supreme Court discussed the basic purpose for estoppel:

> Promissory estoppel is defined in *Bush v. Bush*, 278 Ala. 244, 245, 177
> So.2d 568, 578 (1964):
>
> > "A promise which the promisor should reasonably expect
> > to induce action or forbearance of a definite and substantial
> > character on the part of the promisee and which does induce such
> > action or forbearance is binding if injustice can be avoided only by
> > enforcement of the promise."  Restatement of the Law of
> > Contracts, § 90, page 110.
>
> This principle has long been recognized in Alabama jurisprudence.  *See Johnson
> v. Blair*, 132 Ala. 128, 31 So. 92 (1901).

---

[8] Instead of fault, the court finds that Donald's decision to take the deposition of Shirley before his client was prudent.
Additionally, counsel's providing Hammonds with the interrogatories submitted by Shirley afforded him time to review them.

[9] To the extent that the plaintiff asserts that prejudice need not be shown because this is a failure to defend case and
not a "coverage" case, the court is unconvinced and again finds that summary judgment is due to be granted.  The plaintiff's
position is not totally without merit.  Various courts around the country have held that it is not necessary in certain instances for
the insured to demonstrate prejudice.  *See Knox-Tenn Rental Co. v. Home Ins. Co.*, 2 F.3d 678, 684 (6th Cir. 1993) (in a coverage
case, the court noted that "[t]he rule [regarding an insurer's failure to inform an insured that it was defending pursuant to a
reservation of rights] by its very language establishes the presumption of prejudice); *Braun v. Annesley*, 936 F.2d 1105, 1110 n.5
(10th Cir. 1991)("Prejudice to the insured is presumed by virtue fo the insurer's assumption of the defense"); *Pendleton v. Pan
American Fire and Casualty Co.*, 317 F.2d 96, 99 (10th Cir.) ("by the weight of authority,it is not necessary for the insured to
show prejudice in such a situation because he is presumed to have been prejudiced by virtue of the insurer's assumption of the
defense"), *cert. denied*, 375 U.S. 905, 84 S. Ct. 196, 11 L. Ed. 145 (1963); *Potesta v. U.S. Fidelity & Guar. Co.*, 202 W. Va. 308,
321, 504 S.E. 2d 135, 148 (W. Va. 1998) ("While the party asserting waiver or estoppel has the burden of proving it, [ ] we will
presume prejudice resulted where an insured has shown that his insurer assumed the defense of an action. . . .  The insurer may,
of course, rebut this presumption by presenting evidence to show that no prejudice actually resulted and that the insured did not
relinquish his right to conduct his defense.").  Other courts have held that a showing of prejudice is necessary.  *See National
Union Fire Ins. Co. V. Shalen*, 999 F.2d 1532, 37 (11th Cir. 1993) (requiring a showing of prejudice under Florida law); *Horning
Wire Corp. v. Home Indemnity Co.*, 8 F.3d 587, 590 (7th Cir. 1993) (requiring prejudice under Illinois law); *Con Pacific
Indemnity Co. v. Acel Delivery Systems*, 485 F.2d 1169, 1173 (5th Cir. 1973) ("For estoppel to prevent the assertion of a defense
of noncoverage [in the absence of a reservation of rights or a waiver], there must be a showing of prejudice); *State Farm Lloyds,
Inc. v. Williams*, 791 S.W. 2d 542, 552-53 (Tx. App. 1990) ("unless a conflict of interests or other harm is clear and
unmistakable, . . . the insured must show how he was harmed").

[10] This was confirmed by the plaintiff's counsel at the hearing on the motion.

The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):

> An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*Mazer,* 340 So.2d at 772-73. There is no question that in this case, the first two elements exist. The court finds, however, that the last one does not. Therefore, this case does not warrant application of estoppel under the specific facts.[11] Accordingly, the court finds that Scottsdale's motion for summary judgment is therefore due to be granted on the breach of contract claim.[12]

## B. Bad Faith

Hammonds claims that Scottsdale's denial of coverage constituted a bad faith refusal of coverage because it had no lawful basis upon which to withdraw its ensuing defense of Hammonds in the Shirley suit. Hammonds argues that Scottsdale had a duty to investigate the facts beyond those alleged in the Shirley complaint to determine whether coverage was provided under Hammonds's policy. Hammonds also asserts that Scottsdale failed to properly inform its claims handlers as to the applicability of the employment-related practices exclusion under which, it asserts, the acts in the Shirley suit fall. Hammonds further alleges that Scottsdale's failure to investigate facts outside the complaint, and its failure to properly educate its claims handlers with regard to such further investigation, together with its refusal to defend him in the

---

[11] The Alabama Supreme Court in *Parish*, 630 So. 2d at 439, noted that "detrimental reliance is a crucial element of estoppel." The Court further stated that the plaintiff would have to show "that he acted in reliance" on the insurer's action and that it "resulted in prejudice to him." *Id.*

[12] In his response to Scottsdale's motion for summary judgment (Doc. 44 at 11), Hammonds has suggested that he is due summary judgment on his breach of contract claim under the law in Alabama. Because this was raised as a suggestion in the August 22, 2000 brief and the dispositive motion deadline set by this court was August 4, 2000, (doc. 38), it is untimely.

22

Shirley suit, constitutes bad faith.

Scottsdale argues that summary judgment is proper on Hammonds's bad faith claim

because it had a lawful basis for refusing to defend Hammonds in the Shirley suit, and therefore

Hammonds cannot prove breach of contract, an essential element of a claim for bad faith.

Even though the court has determined that Scottsdale did not breach its contract with the

plaintiff, the court will proceed to consider the remaining claims, assuming for the sake of

argument that summary judgment is not due to be granted on the breach of contract claim.

The Supreme Court of Alabama has stated the elements of the tort of bad faith as

follows:

(a) an insurance contract between the parties and a breach thereof by the
defendant;

(b) an intentional refusal to pay the insured's claim;

(c) the absence of any reasonably legitimate or arguable reason for that refusal
(the absence of a debatable reason);

(d) the insurer's actual knowledge of the absence of any legitimate or arguable
reason;

(e) if the intentional failure to determine the existence of a lawful basis is relied
upon, the plaintiff must prove the insurer's intentional failure to determine
whether there is a legitimate or arguable reason to refuse to pay the claim.

*Blackburn v. Fidelity and Deposit Co. of Md.*, 667 So. 2d 661, 667 (Ala. 1995) (quoting *National*

*Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)); ( *Harrington v. Guaranty*

*National Insurance Co.*, 628 So. 2d 323, 325 (Ala. 1993) (quoting *Bowen*, 417 So. 2d at 183).

"In short, the plaintiff must go beyond a mere showing of nonpayment and prove a bad faith

nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently,

the plaintiff must show that the insurance company had no legal or factual defense to the

23

insurance claim." *Bowen*, 417 So. 2d at 183.  The tort of bad faith has been defined as follows:

> Every contract contains an implied in law covenant of good faith and fair dealing;
> this covenant provides that neither party will interfere with the rights of the other
> to receive the benefits of the agreement. [Citations omitted.]  Breach of the
> covenant provides the injured party with a tort action for "bad faith"
> notwithstanding that the acts complained of may also constitute a breach of
> contract. [Citations omitted.]

*Blackburn*, 667 So. 2d at 667 (quoting *Chavers v. National Sec. Fire & Cas. Co.*, 405 So. 2d 1, 4

(Ala. 1981) (quoting *Childs v. Mississippi Valley Title Ins. Co.*, 359 So. 2d 1146 (Ala. 1978))).

In other words, "a bad faith claim will lie for a failure to provide the benefits contracted for in an

insurance policy." *Blackburn*, 667 So. 2d at 667.

In bad faith claims arising out of an insurer's failure to pay, the Alabama Supreme

"Court has established the 'directed verdict on the contract claim' standard." *Blackburn*, 667 So.

2d at 668 (citing *National Savings Life Ins. Co. v. Dutton*, 419 So. 2d 1357 (Ala. 1982).

However, the Alabama Supreme Court noted that such a standard was not applicable in all bad

faith cases. *Blackburn*, 667 So. 2d at 668 (citing *Thomas v. Principal Financial Group*, 566 So.

2d 735 (Ala. 1990)).  In a bad faith failure to defend case, the Alabama Supreme Court has

determined that "even if an insured was not entitled to a directed verdict on the contract claim,

the bad faith claim could be submitted to the jury if 'the insurer either intentionally or recklessly

failed to properly investigate the claim or subject the results of the investigation to a cognitive

evaluation and review.'" *Blackburn*, 667 So 2d at 668 (quoting *Thomas*, 566 So. 2d 735 ).

Accordingly, because the court has determined that the plaintiff would not be entitled to a

directed verdict on his contract claim for the reasons stated in the last section, the question

becomes whether Hammonds has "presented substantial evidence that [the insurer] failed to

properly investigate [his] claim for a defense" to the Shirley suit or "failed to subject the results

24

of that investigation to a fair review, resulting in a bad faith failure to defend." *Blackburn*, 667 So. 2d at 668.

Scottsdale argues that the form UTS-182s Employment-related Practices Exclusion exempts from coverage the claims alleged in the Shirley suit. The claims alleged in the Shirley suit are as follows: assault, battery, false imprisonment, invasion of privacy, intentional infliction of emotional distress, outrage, and defamation. (Doc. 40, Ex. A). The Employment-related Practices Exclusion, in relevant part, exempts from coverage bodily injury to a person arising out of any of the following: employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person. (Doc. 40, Ex. B). While the claim for defamation is specifically excluded by the language of the UTS-182s, the remaining claims alleged in the Shirley suit are not specifically excluded, and if covered, require Scottsdale to provide a defense for those covered claims. See *Blackburn*, 667 So. 2d at 670 (stating that "if a complaint alleges both acts covered under the policy and acts not covered, the insurer is under a duty to at least defend the allegations covered by the policy.") (quoting *Tapscott v. Allstate*, 526 So. 2d 570, 574 (Ala. 1998)).

As previously stated, the Alabama Supreme Court has held that "ambiguities in the language of an insurance policy are construed in favor of the insured, rather than the insurer." *Blackburn*, 667 So. 2d at 669 (citing *Scottsdale Ins. Co. v. Town of Orange Beach*, 618 So. 2d 1316, 1322 (Ala. 1993); *St. Paul Fire & Marine Ins. Co. v. Edge Memorial Hosp.*, 584 So. 2d 1316 (Ala. 1991); *Sullivan v. State Farm Mut. Auto. Ins. Co.*, 513 So. 2d 992, 994 (Ala. 1987)). Because an insurer's duty to defend is determined by claims and allegations contained in the complaint, "if there is any uncertainty as to whether the complaint alleges facts that would

25

invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Blackburn*, 667 So. 2d at 668 (citing *United States Fidelity & Guar. Co. v. Armstrong*, 479 So. 2d 1164 (Ala. 1985); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977); *Pacific Indem. Co. v. Run-A-Ford Co.*, 161 So. 2d 789 (Ala. 1964); *Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598 (11th Cir. 1993); *Perkins v. Hartford Ins. Group*, 932 F.2d 1392 (11th Cir. 1991)).

Because the claims alleged in the Shirley suit squarely fit within the specifically enumerated exemptions in the form UTS-182s Employment-Related Practices Exclusion, further investigation was not necessary to defeat the bad faith claim advanced in this litigation. Even though Shaffer failed to recognize the exclusion in his initial review of the policy, it was recognized immediately by his supervisor, Davis, upon her review of his reservation of rights letter. (Doc. 40, Ex. L, p. 20; Ex. M, 47-48). After it was brought to his attention, he agreed completely with Davin's assessment that it applied. (Doc. 40, Ex. L, p. 33).

Nothing in the record demonstrates that investigation into the claims alleged in the Shirley complaint would support a finding of bad faith on the part of Scottsdale. Shaffer's deposition demonstrates that besides reviewing the complaint and the terms of the applicable policy, he talked with Donald who had, at least in part, interview Hammonds. The information from Donald was that Hammonds "admit[ted] that during a Christmas party in December '96, he and the plaintiff and a Christine Nichols went into the men's room together." (Doc. 40, Ex. L, p. 12). However, according to Hammonds, "[t]hey all went in voluntarily." *Id.* Hammonds also told Donald "that he may have told [Shirley's] subsequent employer . . . 'that plaintiff stole money form insured's register. . . .'" Shaffer's notes of the conversation with Donald also

26

indicate that Donald was going to talk with Shirley's new employer and to a possible witness to

the theft. *Id.* at 12-13. Shaffer's notes also stated that Donald could provide details of the

bathroom encounter, but [Hammonds] says no one was lured into the men's room as alleged.'"

*Id.* at 12. Although it is true that the company never reconsidered its decision to disclaim

coverage, including a defense for Hammond, nothing evidences that Scottsdale was ever asked

to reconsider the decision. The court is satisfied that the policy, including the Employment-

Related Practices Exclusion, is not ambiguous and there is no evidence that Scottsdale ignored

evidence or information suggesting that the Shirley lawsuit would be under the policy's

coverage. Although Davin admitted she had never had any formal legal training, other than

"seminars put on by [Scottsdale's] coverage counsel" (doc. 40, ex. M at 16), and that she did not

solicit any type of legal opinion or input regarding her determination that the claims alleged in

the Shirley complaint were excluded from coverage (*id.* at 25-26, 33), that is insufficient to

overcome the defendant's motion for summary judgment on the bad faith claim.

The defendant, at a minimum had a "reasonably legitimate or arguable reason" for its

actions. *Blackburn*, 667 So. 2d at 667. Accordingly, summary judgment is appropriate on this

claim.

### C. Negligent And/or Wanton Training and Supervision

The Alabama Supreme Court characterized negligent training and supervision as follows:

> In the master and servant relationship, the master is held responsible for his
> servant's incompetency when notice or knowledge, either actual or presumed, of
> such unfitness has been brought to him. Liability depends upon its being
> established by affirmative proof that such incompetency was actually known by
> the master or that, had he exercised due and proper diligence, he would have
> learned that which would charge him in the law with such knowledge. It is
> incumbent on the party charging negligence to show it by proper evidence. This
> may be done by showing specific acts of incompetency and bringing them home
> to the knowledge of the master, or by showing them to be of such nature,

character, and frequency that the master, in the exercise of due care, must have
had them brought to his notice. While such specific acts of alleged incompetency
cannot be shown to prove that the servant was negligent in doing or omitting to
do the act complained of, it is proper, when repeated acts of carelessness and
incompetency of a certain character are shown on the part of the servant to leave
it to the jury whether they would have come to his knowledge, had he exercised
ordinary care.

*Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1003 (Ala. 1993) (citing *Lane v. Central Bank of*

*Alabama, N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983) (quoting *Thompson v. Havard*, 285 Ala. 718,

723, 235 So. 2d 853 (1970))); see also, *Ledbetter v. United American Ins. Co.*, 624 So. 2d 1371

(Ala. 1993).

Hammonds alleges that Scottsdale was negligent and/or wanton in failing to properly,

adequately, and/or reasonably train and supervise its agents that were evaluating claims made by

policyholders. Scottsdale asserts that summary judgment is proper because Hammonds has not

established that either Shaffer or Davin was incompetent, and because there was no breach of

duty upon which Hammonds could base claims for negligent and/or wanton supervision. *See*

*Lambert v. The Independent Life & Accident Ins. Co.*, 994 F. Supp. 1385 (M.D. Ala. 1998)

(dismissing plaintiff's negligent and/or wanton hiring, training, and supervision claims because

plaintiff had failed to establish her underlying tort claims, "there being no breach of duty upon

which to base her negligent and/or wanton hiring, training and supervision claims") (citing

*Hargrove v. Tree of Life Christian Day Care Center*, 699 So. 2d 1242 (Ala. 1997); *Zielke v.*

*AmSouth Bank N.A.*, 703 So. 2d 354 (Ala. Civ. App. 1996)).

The record before the court will not support the plaintiff's negligent training and

supervision claim. Nothing demonstrates that either Shaffer or Davin were incompetent. At the

time Shaffer reviewed the plaintiff's claim, he had been a specialty claims examiner for

approximately four or five months. (Doc. 40, Ex. L, p. 6). He had worked for the company

since 1993 and was a senior claims examiner before serving as a specialty claims examiner. (*Id.*
at 5-6). He never engaged in conduct that required Scottsdale to discipline him. (*Id.* at 14).
Although he never received any outside training, he frequently attended in-house training
conducted by attorneys from around the country. (*Id.* at 44). He also consulted with his
supervisor, Davin, regarding this claim. (*Id.* at 17).

Davin was a litigation specialist/technical consultant at the relevant time. She reviewed
the plaintiff's claim with Shaffer and made the initial determination that the conduct alleged in
the Shirley lawsuit was not covered by the policy. (Doc. 40, Ex. M, p. 24). She also received
regular in-house legal training. (*Id.* at 16-17). There is no evidence her performance has been
substandard or that she was disciplined for poor performance.

Under these circumstances, the defendant's motion for summary judgment is due to be
granted on this claim.

### D. Fraud/Misrepresentation

The Alabama Code defines fraud as follows:

§ 6-5-101. Fraud; misrepresentation of material fact

Misrepresentations of a material fact made willfully to deceive, or recklessly
without knowledge, and acted on by the opposite party, or if made by mistake and
innocently and acted on by the opposite party, constitute legal fraud.

ALA. CODE § 6-5-101 (2000). In order for a plaintiff to substantiate a claim for fraudulent
misrepresentation, regardless of whether the misrepresentation was willful, reckless, or
mistaken, he must prove four elements: "(1) a false representation, (2) that the false
representation concerned a material existing fact, (3) that the plaintiff relied on the false
representation, and (4) that the plaintiff was damaged as a proximate result of the reliance."
*George v. Associated Doctors Health & Life Ins. Co.*, 675 So. 2d 860, 862 (Ala. 1996) (citing

29

*Jarrard v. Nationwide Mutual Ins. Co.*, 495 So. 2d 584 (Ala. 1986); *International Resorts, Inc. v. Lambert*, 350 So. 2d 391 (Ala. 1977)).

Hammonds's claim for fraud is based on the following facts: (a) Scottsdale represented to him in its initial undertaking to defend him that the Shirley suit was covered under his policy of insurance; (b) Scottsdale subsequently represented to him in its April 29, 1997, disclaimer letter that the Shirley suit was excluded from coverage under his policy of insurance and that it would no longer defend or indemnify him in the Shirley suit; (c) subsequent letters and communications regarding the status of the defense of the Shirley suit by and from the attorney employed by Scottsdale to defend Hammonds, constituted a representation that, contrary to its previous letter of April 29, 1997, the Shirley suit was covered under his policy of insurance; and (d) Scottsdale's ultimate withdrawal of its defense of Hammonds in the Shirley suit, represented to Hammonds that the Shirley suit was not covered under his policy of insurance.

Assuming for the sake of argument that the plaintiff has demonstrated that Shaffer's actions resulted in a material false representation that the plaintiff was entitled to a defense when he was not, the plaintiff is not entitled to relief because he cannot demonstrate the last element–damages. As just noted, in order to state a claim, the plaintiff must also demonstrate that he was damaged or that he suffered a detriment. In cases involving fraud, damages are assessed by determining the amount that would place the defrauded person in had the representation been true. *Platt v. ERA Marie McConnell Realty, Inc.*, 774 So. 2d 577, 586 (Ala. 1999), *rev'd on other grounds, Ex parte McConnell*, 774 So. 2d 588 (2000). *See also Liberty National Life Insurance Company v. Sanders*, ___ So. 2d ___, 2000 WL 1716962 , *4 (Ala. 2000) ("This Court has held: '[T]here is [a] well-settled rule pertaining to the measure of damages resulting from fraudulent conduct or representations, to the effect that *such damages*

30

*will be fixed by an amount which would place the defrauded person in the position he would*

*occupy if the representations had been true.' Fogleman v. National Surety Co., 222 Ala. 265,*

*268 132 So. 317 (1931) (emphasis added).").*[13]

There is insufficient evidence of detriment or damages to satisfy this last element. Scottsdale provided legal counsel until it determined that the Shirley lawsuit was not covered by the policy. Thereafter, the plaintiff was required to undertake the costs of his defense. This consequence was a result of Scottsdale determining the Shirley lawsuit was not covered and not a result of fraud. Donald's representation of Hammonds, which certainly did not enure to the detriment of Hammonds, was not charged to him. Hammonds's costs began after he hired counsel of his own choosing. Thus, there is not the necessary detriment to state a claim. The court does not find his assertions of "inconvenience, annoyance, mental anguish, emotional distress" (doc. 44, p. 16) alone to be sufficient to satisfy this element.

### E. Outrage

The tort of outrage was first recognized by the Alabama Supreme Court in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). The Court described the tort of outrage as follows:

> The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. [Citation omitted]. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Potts v. Marilyn Hayes Vaughan Chilton Medical Center, Inc.*, 771 So. 2d 462, 464-65 (Ala.

---

[13] The *Sanders* court also noted that the award in that case was also justified not only on the reasoning cited in the text, but also on her evidence of mental anguish. 2000 WL 1716962, *4.

2000) (quoting *Inmon*, 394 So. 2d at 365). The Alabama Supreme Court in *Potts* noted that "[t]he tort of outrage is an extremely limited cause of action," so limited, in fact, that it has been "recognized in regard to only three kinds of conduct: (1) wrongful conduct in the family burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989)." *Potts*, 771 So. 2d at 465. In a claim for outrage, a plaintiff must prove that "the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Potts*, 771 So. 2d at 465 (quoting *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)).

Hammonds bases his claim for outrage on the emotional distress he experienced following Scottsdale's withdrawal of a defense in the Shirley suit, alleging that Scottsdale's actions and/or inactions in handling and later denying his claim for defense and indemnity in the Shirley suit were extreme and outrageous and (1) intended to inflict emotional distress upon Hammonds or (2) it knew or should have known that emotional distress was likely to result. (Doc. 1, Ex. 1).

Scottsdale argues that summary judgment is proper on Hammonds's claim for outrage because its behavior does not rise to the level required by Alabama law to be "so extreme in degree as to go beyond all bounds of decency," or which could be "regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 368.

Even assuming that Scottsdale wrongly withdrew its defense in the Shirley suit, Hammonds has not provided any evidence that its actions were extreme or outrageous, nor has

Hammonds proved that his emotional distress was "so severe that no reasonable person could be expected to endure it." *Potts*, 771 So. 2d at 465. Hammonds testified that he broke out in hives due to the stress, and that he was embarrassed because he could not hold his urine at the courthouse. (Doc. 40, Ex. J at 160-61). Hammonds, however, attributes this stress to Scottsdale's denial of coverage and "somebody [Shirley] mak[ing] false claims against" him. (Doc. 40, Ex. J at 160). If Hammonds demonstrates that Scottsdale, and not the Shirley lawsuit, caused the emotional distress, an essential element, he still has not shown that Scottsdale's actions were intentional or reckless, or extreme and outrageous. Additionally, he also has not meet the third requirement, demonstrating that Scottsdale caused emotional distress so severe that no reasonable person could be expected to endure it. Therefore, even assuming that Hammonds did experience severe emotional distress, Scottsdale's actions do not satisfy the other elements. Accordingly, Scottsdale's motion for summary judgment on Hammonds's claim for outrage is due to be granted.

## F. Conversion

Hammonds alleges in count six of his complaint, that Scottsdale converted his insurance premiums. Scottsdale asserts that summary judgment is proper on Hammonds's conversion claim because the money paid by Hammonds's for insurance premiums was not in any way segregated or otherwise identifiable.

"To establish conversion, a plaintiff must show a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Huntsville Golf Development, Inc. v. Ratcliff*, 646 So. 2d 1334, 1336 (Ala. 1994) (citing *Covington v. Exxon Co., U.S.A.*, 551 So. 2d 935 (Ala. 1989)). The plaintiff must have a right to the immediate possession of the money in question, and the

33

money must be specific and segregated or capable of identification. *Willingham v. United Insurance Co. of America*, 628 So. 2d 328, 333 (Ala. 1993).

The dispositive question in a case of conversion involving the payment of insurance premiums is "whether the money paid as premiums was sufficiently identified to be subject to conversion." *See id.* (citing *Gillis v. Benefit Trust Life Insurance Co.*, 601 So. 2d 951 (Ala. 1992)). If the "insurance premiums are drawn by the defendant insurance company directly from a specific account belonging to the plaintiff[]," then the money is sufficiently identifiable for a conversion claim. *See id.* However, if the evidence shows only that the premiums were paid by the plaintiff to the insurance company, without more, the money in question is not sufficiently segregated or identifiable for conversion. *See id.* Such a relationship between a plaintiff and a defendant insurance company "is akin to that of a debtor and creditor," in which "an action for conversion of funds representing the indebtedness will not lie against the debtor." *Willingham*, 628 So. 2d at 333.

Hammonds testified in his deposition that in satisfaction of his insurance premiums, he simply wrote the checks and gave them to Gragg Robinson. (Doc. 40, Ex. J at 174). Because the Alabama Supreme Court has identified such a relationship as a debtor–creditor relationship, not subject to an action for conversion, Scottsdale's motion for summary judgment on Hammonds's claims for conversion is due to be granted. Additionally, in the absence of a showing of "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property," summary judgment is due to be granted the defendant. *Ratcliff*, 646 So. 2d at 1336.

## CONCLUSION

Premised on the foregoing, the court finds that the defendant's motion for summary

judgment is due to be granted. An order consistent with the court's finding will be entered

contemporaneously herewith.

DONE, this the 2nd day of July, 2001.

**JOHN E. OTT**
United States Magistrate Judge

35